## COMMISSIONERS *against* McCALMONT.

In an action of debt upon a bond conditioned for the payment of money, upon which there was an endorsement, referring to an agreement between the parties to it, it is competent for the defendant to give parol evidence of what that agreement was, in order to shew, that it was the understanding that the bond on which the suit was brought was not to be paid.

That the defendants derived a pecuniary benefit from the arrangement, is no reason why they should be estopped from giving in evidence what the arrangement was.

The commissioners of a county, having made an arrangement with certain individuals to purchase in a number of tracts of unseated lands for them, which were being sold by the treasurer for taxes, and for the purchase-money of which the purchasers gave a bond to the commissioners, upon which there was an endorsement referring to an agreement between the parties, it was *held*, that it was not such an illegal transaction, as that the obligors in the bond should not be permitted to give parol evidence of what the agreement was, in order to show that they were but trustees for the county.

WRIT of error to *Venango* County.

This was an action of debt brought by *Abraham Selders* and others, *Commissioners of Venango county*, for the use of *Warren county*, against *Alexander McCalmont, Thomas Huling,* and *William Moore*. The action was founded on a bond given by the defendants in error to *Abraham Selders* and others, commissioners of *Venango* county, on the 17th day of February, 1819, in the sum of five thousand dollars, conditioned for the payment of two thousand six hundred and forty-two dollars and eighty-seven cents to the said commissioners, or their successors in office; one-half thereof in six months, and the remaining half in twelve, from that date. A warrant of attorney to confess judgment was added to the bond, and in pursuance of it a judgment was entered up in the Common Pleas of *Venango* county, of February term, 1820, which was opened by agreement of the parties at April term, 1830; the plea of payment with leave, &c. put in by the defendants, upon which issue was taken by the plaintiffs.

The cause was tried at June term, 1830; the bond was first given in evidence, and upon it were the following endorsements signed by the plaintiffs, the commissioners of *Venango* county, and sealed with their official seal at the time of giving the bond.

"We, the undersigned, commissioners of *Venango* county, do hereby acknowledge that the within bond is given by *A. McCalmont, Thomas Huling*, and *William Moore*, for the payment of the taxes and costs due on two hundred and seventy-five tracts of land, situate in the counties of *Venango* and *Warren*, sold to *A. McCalmont* and *Thomas Huling*, by order of the said commissioners, by *John McCalmont, Jr.* Esquire, treasurer of said counties, on the twenty-third day of December, 1818, *in pursuance of an agreement between the parties to these presents.*

(Commissioners *v.* McCalmont.)

And we, the said commissioners, do agree, for ourselves and our successors in office, to and with the said *A. McCalmont, Thomas Huling* and *William Moore*, that the within bond shall be a lien only on the said two hundred and seventy-five tracts of land purchased by the said *A. McCalmont, Thomas Huling* and *William Moore.* And we do further agree, that any of the said tracts that may or shall be redeemed, *agreeably to law*, shall be released from said lien, and that the said lien shall only extend to those of the said lands, that shall not be redeemed as aforesaid.''

"*To the Treasurer of Venango County:*

Sɪʀ:—You are hereby required and directed to receive the foregoing bond, and to credit *John McCalmont, Jr.*, late treasurer, with part thereof; to wit: two thousand three hundred and sixty-seven dollars and eighty-seven cents, on account of any balance that may be due from him as late treasurer, and to receipt to him for that sum. You are also directed to pay to *Alexander McCalmont*, Esquire, prothonotary of *Venango* county, two hundred and seventy-five dollars out of the amount of said bond, when received by you, being his fees for entering the acknowledgments of the deeds of lands sold to *Huling* and *McCalmont*, for which the foregoing bond is taken; and which is included therein.   Given under our hands and seal of office, 17th February, 1819.''

These endorsements upon the bond were also read in evidence to the court and jury.

The defendants then, on their part, gave in evidence the book of the treasurer, containing an account of the sales of the two hundred and seventy-five tracts of land, showing the sale of them to *McCalmont* and *Huling*, two of the defendants; and that a number of them were subsequently redeemed by the owners thereof, and the redemption money upon them paid to the treasurer of the county.

It was then admitted that the redemption money so paid in, remained in the treasury of the county for the use of the county, to be credited on the bond in suit; except so much as was paid out by the treasurer to the prothonotary for his fees, as mentioned in one of the endorsements on the bond, and the twenty-five per cent. paid to the purchasers.   The reports of the auditors for the years 1819 and 1820 were given in evidence, where the county is charged with the amount of the money for which the bond was taken, and credited by the bond of the defendants, according to the order of the commissioners endorsed thereon.   In the report of the auditors for 1820, the county treasurer is charged with six hundred and thirty-one dollars and eighty-one cents, received on account of the lands redeemed; and credited with the two hundred and seventy-three dollars, fees paid the prothonotary.

(Commissioners *v.* McCalmont.)

The defendants then offered to prove by *Robert Mitchell*, one of the obligees and county commissioners named in the bond, that the purchase of the two hundred and seventy-five tracts of land was made by the defendants, for the use of the county; that the bond was given for the amount of the taxes assessed, and the costs accrued on these lands. That by the agreement between the commissioners and the defendants, the land so purchased were alone to be bound for the payment of the bond. That upon the redemption of any of the lands, the money was to be left in the treasury and credited on the bond; and any tracts not redeemed were to be sold, without the expense of an inquisition. That the defendants were in no event to be personally responsible for any part of the amount of the bond. That the lands were purchased by the defendants for the use of the county, at the request of the commissioners of the county; because they believed that they would be sooner redeemed, than if purchased in by the commissioners themselves, agreeably to law. To the admission of this testimony the plaintiff's counsel objected, and the court below over-ruled the objection, and sealed a bill of exception taken by the plaintiff's counsel thereto, which is assigned for the first error.

The defendants, after *Robert Mitchell* was sworn and gave his testimony, offered the testimony of *Abraham Selders*, another of the obligees, and one of the county commissioners named in the bond, to the same effect for which the testimony of *Mitchell* was given, and also to show, that immediately before and at the time of making the assignment of the bond to the commissioners of *Warren* county, for whose use this suit was prosecuted, the commissioners of *Venango* county related and explained fully and truly to the commissioners of *Warren* county, the agreement under which the lands were purchased by the defendants, and the terms and conditions upon which, under that agreement, the bond was given, to the same extent that the defendants offered to make proof of to the court and jury; and that the commissioners agreed to, and did accept the assignment of the bond, subject to the agreement under which it was given, and with full knowledge of it; to which the plaintiff's counsel in like manner objected, and the court over-ruling the objection, sealed a second bill of exception taken by them, which is assigned for the second error.

The testimony of *John McCalmont*, which was offered by the defendants, in the next place, to prove further the nature and terms of the contract, under which the defendants purchased the land, and afterwards gave their bond, was also objected to, but admitted by the court, and a third bill of exception taken, which is the ground of the third and last error.

*Galbreath* for plaintiff in error,

Contended, that the evidence was inadmissible, and went directly to contradict the writing in a material and vital part.

(Commissioners *v.* McCalmont.)

1st. It was inadmissible, even if the transaction were with individuals treating for themselves, in their own rights. 2 *Yeates*, 370. 6 *Bin.* 489. 10 *Serg. & Rawle*, 339. 16 *Serg. & Rawle*, 98. 1 *Rawle*, 108. Parol testimony can only be received against a writing in cases of *latant* ambiguity—to shew a fraud or plain mistake in omitting a clause intended to have been inserted. In *Norris Peake*, 178, the doctrine is fully explained and the distinction taken, between a latant and a patent ambiguity; and so in page 194. In 1 *Phil. Ev.* 481, the doctrine is fully laid down, that at law, there could be no question: and the rule is the same in *Equity*, page 501. 1 *Johns. Chan.* 425. A mortgage given on a number of lots, it was decided could not be varied or affected by proof of a parol agreement that the lien was to be in a rateable proportion to the value of each. 5 *Serg. & Rawle*, 363, & 10 *Serg. & Rawle*, 290, were cases of fraud, and the last was in favor of a surety. 16 *Serg. & Rawle*, 345, was a case of latent ambiguity and failure of consideration. In 1 *Bay.* 461, it was decided that parol testimony was inadmissible to shew that to be in trust, which in the deed was absolute.

In the second place, the transaction here was with agents and mere trustees, and the defendants were bound to know the extent of their authority: and would be the more likely to reduce their agreement to writing and therefore the objection to the admission of the evidence was strengthened. *Paley on Agency*, 4, 5. 11 *Serg. & Rawle*, 377.

But in the third place, the defendants were treating with public officers; the transaction was clothed with an official sanction, and therefore the objection to impugning it by parol still stronger. 3 *Serg. & Rawle*, 604. 1 *Bin.* 470. 9 *Serg. & Rawle*, 260. 3 *Yeates*, 17. 13 *Serg. & Rawle*, 60. 9 *Serg. & Rawle*, 156. 4 *Serg. & Rawle*, 134.

In the fourth place, the transaction, as attempted to be proved by the defendants, would be fraudulent, and they being parties to it, cannot impeach it. It would be a fraud upon the owners of the unseated lands sold, compelling them to pay one dollar for the acknowledgment of each deed and twenty-five per cent. on that and other costs and taxes, and limit materially the right of redemption. It would be a fraud also upon the county, taking from it the six per cent. per annum on the taxes and costs and accruing taxes, and the ultimate interest in the land in case of no redemption by the owners. 5. *Bin.* 109. 12 *Serg. & Rawle*, 448. 13 *Serg. & Rawle*, 224. *Purd. Dig.* 865. Section 4, 5 & 6 *of Act of* 1815.

Lastly, I contend that the defendants in this case were estopped from shewing the trust alleged. They had received the benefit as individual purchasers. They had accepted and received the two hundred and seventy-five dollars for the acknowledgment of the deeds,

(Commissioners *v.* McCalmont )

and the twenty-five per cent. on the redemption, so far as the land had been redeemed, in the character of purchasers as individuals, which they could not have received in any other character; and the law will not permit them, when the balance of the money due on their land is claimed from them in that character, to turn round and say that they were not purchasers as individuals, but merely as trustees for the county. 11 *Serg. & Rawle,* 422. 17 *Serg. & Rawle,* 364. 1 *Rawle,* 163.

*Pearson* and *J. Banks* for defendant in error, whom the court declined to hear.

The opinion of the court was delivered by

KENNEDY, J.—Each of the errors assigned in this case presents the same question; and will therefore be considered together as but one.

It is contended by the counsel for the plaintiff, that the testimony ought not to have been admitted; because it went to alter, change the nature of, and contradict the bond upon which the plaintiffs found their claim; that no parol evidence ought to have been received of this character. To judge fairly of this matter, it is necessary to look at the endorsements upon the bond, as well as the face of the bond itself. These endorsements having been made at the same time with the bond, between the same parties, and under the same assignment, are to be considered as parts of the bond, and all parts of the same transaction; and further, any agreement previously entered into between the parties, and therein referred to, must also be considered as part of the same transaction; whether reduced to writing or not. If this were not to be the case, it would deprive one of the parties of the benefit of an agreement entered into and well understood by both; which in effect would be a fraud that the law will not sanction. The first endorsement on the bond states that the bond was given for the taxes and costs which had been assessed and had accrued upon two hundred and seventy-five tracts of land lying in *Venango* and *Warren* counties, which had been sold on account of these taxes and costs, to two of the defendants, on the 23d day of December, 1818, *in pursuance of an agreement between the parties to the bond.* What this agreement was, in its various terms and conditions, does not appear in the bond or either of the endorsements; but it is expressly referred to. Why is it referred to? Is it not plainly for the purpose of regulating and controlling the effect of the bond? The reference that is thus made in the endorsement, to the agreement made previously, between the same parties, in respect to the sale and purchase of the lands, is equivalent to a written agreement between them, that that previous agreement, relating to the purchase of the lands should be considered and made part of the bond itself; for the purpose of di-

(Commissioners *v.* McCalmont.)

recting and restricting its operation and limiting the liability of the defendants under it.   If such a clause had been formally introduced, and set out in as many words as I have here repeated it, who could doubt for a moment, but that parol testimony ought to be received, to prove what the agreement relating to the purchase of the lands was; when it appeared that the agreement itself was a parol one? Why is it that parol evidence shall not be received to alter, add to, diminish, vary or contradict a written agreement?   Is it not for this reason, that where parties to an agreement have had it committed to writing, it must be presumed that it was done for the greater certainty, as well in shewing what the agreement was, as in preserving the evidence of it, and that these objects can only be attained by putting fully and explicitly into the writing every thing that was agreed on?   This I consider the foundation of the rule that excludes parol evidence in such cases.   But if it appear in the written agreement itself, that all and every thing which has been agreed on between the parties, was not put into it: and that instead of inserting it, a reference is made to it, as in this case, then the reason of the rule does not exist; and of course it ought not to to be applied.

Again it was argued, that if the parol evidence objected to, might have been admitted against *Venango* county, it was incompetent as against *Warren* county, which is the real plaintiff and party now interested.   I can perceive no reason for this distinction.   It is a principle too well established in this state to admit of any doubt, that the assignee of a bond takes it subject to every equity and objection which the obligor or obligors may be able to make against the payment of it.   But in this case, if the commissioners of *Warren* county did not know before taking an assignment of the bond, every thing that has been made known to them since, it was exclusively their own fault and negligence; because the endorsement on the bond was sufficient to inform them, that there was an agreement between the parties to it, that might have a very important bearing in regard to the payment of it.   This however is not all; for part of the evidence objected to and admitted went to shew most clearly, that they had full information of all the circumstances and agreements between the parties to the bond, before they took the assignment of it; and expressly agreed to take it subject thereto.

In the last place, it has been said, that the defendants ought to be estopped from setting up the defence, to establish which, the parol evidence was offered; because that they, since the giving of the bond, have claimed and received the twenty-five per cent. paid in upon the amount of the sales of those tracts by the owners, in redeeming them.   That in doing this, they have disclaimed being purchasers of the lands for the use of the county, and have

thereby taken and assumed upon themselves the character of pur-chasers, for their own use and benefit. Admit that this ought to be the effect of their receiving the twenty-five per cent., still it would not have been a good ground for rejecting the parol evidence, the admission of which is complained of as error. The counsel for the plaintiff below, in order to have availed himself of this ground of defence, ought, after the admission of the evidence, to have requested the court to charge the jury, that if they believed the facts to be so, as the plaintiff in this particular alleged they were, that then they ought to find a verdict generally in favor of the plaintiffs, for the balance due on the bond. If, however, it was a part of the original agreement, that the defendants were to have this twenty-five per cent., I do not see how their demanding and re-ceiving it could have any such effect as is contended for. If they had no right to claim it by their agreement, the commissioners ought not to have permitted them to receive it, or to get a credit for it. If nothing was said about it in the agreement, I would not suppose that they had any right to it; because they stood in the cha-racter of trustees for the county, and had no right to claim any thing beyond what was expressly provided by the terms of the agreement. But as it is said to have been allowed them without objection, it may therefore be presumed that they were entitled to it by their agreement.

Another ground taken by the counsel, why the testimony ought not to have been taken, was, if I understood it correctly, that it went to establish as a defence, a transaction which was repugnant to the spirit and provisions of the acts of assembly authorizing the sale of unseated lands for the payment of taxes; that by these acts the owners of such lands, in case any other than the county becomes the purchaser or purchasers of them, (and the county is only per-mitted to buy in cases where the land is not bid up to the amount of taxes and costs upon it,) the owners are allowed only two years to redeem in, and must, if they do redeem, pay twenty-five per cent. upon the amount for which the land was sold; but where the county, for want of buyers, is compelled to purchase, the owners are allowed five years to redeem in, by paying the amount of taxes and costs with six per cent. interest thereon: that the assignment was a fraud upon the owners of these unseated lands, and intended to deprive them of the benefit of the five years to redeem in, and to compel them to pay twenty-five per cent. upon the amount of the sales, which was more than the amount the taxes and costs would have been, although the county was in reality, as the defen-dants allege, the purchaser of the lands. I do not see any reason for rejecting the evidence, because it proved that the bond was given under an agreement entered into between the defendants and the obligees in contravention to these acts of assembly. The only

effect which this could have, if any at all, would have been to have avoided the bond as well as the agreement and arrangement under which it was given. This, however, would defeat the plaintiffs entirely; but it is not claimed by the defendants.

Judgment affirmed.